CHARLES OSGOOD *vs*. THE THOMPSON BANK AND OTHERS.

*F* conveyed certain land to *G*, by absolute deed, to be held by him as security for his acceptances of *F's* paper, and afterwards gave *G* his notes for the amount of the acceptances. *O* had indorsed *G's* note for $5,000 for his accommodation. When this note was about falling due *G* applied to *O* to advance the money to take it up, and indorsed and delivered to him as security therefor a note of *F* for $6,000, not then due, being one of the notes given him for his acceptances of *F's* paper, at the same time representing to him that it was secured by the land conveyed to him by *F*. Afterwards *G*, being largely indebted to the Thompson Bank, gave his note for the amount of the debt, and indorsed over to the bank another of the *F* notes, amounting to $5,000, then over due, as collateral security for the note, at the same time informing the bank that the note was secured by the land which he held. The bank afterwards obtained a conveyance of the land from *G*. At the time of taking the $5,000 note, and at the time of taking the conveyance, the bank had no knowledge that any other person claimed any interest in the security. The land was of the value of only $5,000, and *G* and *F* had both become insolvent. On a bill in equity brought by *O* against the bank, to obtain a pro rata benefit of the security, it was held,—1. That the bank in taking the note of *F* as collateral security for the pre-existing indebtedness of *G*, became a *bona fide* holder for value. 2. That consequently, before the bank obtained the conveyance from *G*, its equity was equal to that of the petitioner. 3. That by obtaining the legal title the bank acquired a superior right to the security, in which it could not be disturbed.

Whether in this state parol evidence is admissible to show that an absolute deed was given as a mortgage : *Quere*.

BILL in equity, to obtain the benefit of certain real estate security held by the principal respondents. The facts, which were found by the court, were as follows :—

Prior to 1854 Albert Fuller & Co., of St. Paul, in the territory of Minnesota, were indebted to Samuel F. Morse, of Boston, for money advanced, in the sum of $5,000, and as security therefor conveyed to him by an absolute deed the land described in the petition. Morse held the land until the 7th of October, 1854, when the Fullers entered into an arrangement with Joseph B. Gay, of Thompson in this state, by which he agreed to accept their paper, and they agreed to cause the land to be conveyed to him to secure him for such acceptances, to the amount of $5,000. After Gay had accepted paper for the Fullers to the amount of $14,000, they paid Morse what they owed him, and he at their request conveyed the land to Gay, by an absolute deed. At the time this con-

veyance was made it was agreed by parol between the Fullers and Gay, that the latter should hold the land only as security for acceptances which had been or should be made by Gay pursuant to the above arrangement. · Subsequently Gay accepted for the Fullers other paper to a large amount, and on the 8th of September, 1856, the amount which he had accepted and paid since the arrangement was entered into was $22,000. For that sum the Fullers gave him five notes, dated September 8th, 1856, two of which were for $3,000 each, two for $5,000 each, and one for $6,000, payable in eight, ten, twelve, fourteen and sixteen months from date, to the order of one Alpheus G. Fuller, and indorsed by him and David L. Fuller. At this time Alpheus G. Fuller requested Gay to hold on to the land until all the notes should be paid, for his, Fuller's, security as indorser, and Gay agreed to do so.

In June, 1857, the petitioner indorsed for Gay two notes for $5,000, payable one on the 15th and the other on the 20th of October following, which Gay procured to be discounted for his sole accommodation. A few days before the first of these notes fell due, Gay informed the petitioner that. he feared he should not be able to meet it at maturity, and requested him to advance the money and take it up, as it would seriously injure him, Gay, to suffer it to be dishonored. The petitioner declined to do so unless he was secured. Gay then proposed that he should take the note which he held for $6,000 as security, but he declined at first to take it, because the makers and indorsers were insolvent. Gay therefore, in order to induce him to advance the money, represented to him that the Fuller note was amply secured by the land conveyed to him, and the petitioner, relying upon that representation, advanced the money and took up Gay's note. Gay at the same time indorsed and delivered to the petitioner the Fuller note for $6,000 as security for the payment of the amount so advanced. When the other note for $5,000, indorsed by the petitioner, became due, he at Gay's request advanced the money and paid it, and Gay gave him other security for the money so advanced. On the 11th day of January, 1858, the Fuller note for $6,000 became due, and was protested for non-

payment, and notice given to Gay and the other indorsers. This note still remains unpaid.

In the course of the summer of 1857 it was ascertained by the respondent Crosby, who was president of the Thompson Bank, that Gay, who then was and for many years previously had been cashier of the bank, was a defaulter to the bank to the amount of $15,000, of which amount he paid the sum of $5,000 on the 8th day of September, 1857, and on the same day gave the bank his memorandum check for the balance. On the 23d of October, 1857, Gay left the bank. In December following he assigned and delivered to Jabez L. Ellis, of Irvington in the state of New York, two of the Fuller notes— one for $5,000, and one for $3,000—and secured the payment of the same upon other property. In the latter part of the same month he paid the bank $2,561 in cash, and two bonds of $1,000 each, and the note of a third person for $575, and then assigned to the bank the other two Fuller notes for $5,000 and $3,000, as collateral security for the payment of the remainder of the amount then due the bank, on the debt evidenced by his memorandum check, and at the time of making the assignment informed the officers of the bank that said note of $5,000 was secured by the land of which he held a conveyance. On the 12th of February, 1858, Gay conveyed the land in question to the respondent Crosby, (then president of the bank,) by a deed absolute on its face, but under a parol agreement that the land should be held by him only as security for the Fuller note of $5,000, and neither Crosby nor the bank had knowledge that Gay held the land for any other purpose or as security for the payment of any other sum, until afterwards so informed by the petitioner. A short time after the land was conveyed to Crosby, the petitioner called upon Gay at Thompson, and on inquiring of him respecting the land, learned that he had conveyed it to Crosby as security for a debt he owed the bank. The petitioner then called on Crosby and informed him that he held the Fuller note for $6,000, and stated to him all the circumstances under which he took it, and that he claimed the benefit of the land as security for the payment of the note. He also requested Crosby to acknowl-

edge his, the petitioner's, interest in the land, by a written declaration proper for that purpose. But Crosby refused to make such acknowledgment, or to recognize the right of the plaintiff to any interest in the land. On the 23d of March, 1858, Gay assigned his property to a trustee for the benefit of all his creditors under the provisions of the insolvent act, and the general creditors, including the petitioner, received a dividend on their claims, out of the estate so assigned, of eleven cents on the dollar. Shortly afterwards Gay died. There is now due to the petitioner, on account of the money advanced by him for Gay, more than the Fuller note for $6,000, and the Fullers still remain insolvent. The land held by Crosby is now worth about $5,000, although in 1856, when the settlement between the Fullers and Gay was made, it was estimated to be worth $20,000.

The bill prayed that the respondent Crosby be decreed to hold the real estate in trust for the payment pro rata of the two notes, of $5,000 held by the Thompson Bank and of $6,000 held by the petitioner, and that he be ordered to execute a declaration of the trust in writing ; with a general prayer for relief. The parties respondent were the Thompson Bank, Crosby, Jabez L. Ellis of the state of New York, and Albert Fuller and George Fuller, survivors of the firm of Albert Fuller & Co., both of the state of Minnesota.

The case was reserved by the superior court, on the facts found, for the advice of this court.

*Hovey*, for the petitioner.

1. The conveyance to Gay of the land which is the subject of controversy in this suit, though absolute in terms, was in equity a mortgage as between the parties, and as against all other persons except *bona fide* purchasers for a valuable consideration without notice. 4 Kent's Com., 142; *Babcock* v. *Wyman*, 19 How., 289, 293, 298 ; *Russell* v. *Southard*, 12 id., 139 ; *Morris* v. *Nixon*, 1 id., 118 ; *Jenkins* v. *Eldredge*, 3 Story, 181, 261, 293 ; *Mills* v. *Mills*, 26 Conn., 213.

2. The assignment by Gay to the plaintiff of the Fuller note for $6,000, carried with it an equitable interest in the mortgage to that amount, and created the relation of trustee and

*cestui que trust* between the parties in respect to the property covered by the mortgage. *Moore* v. *Ware*, 38 Maine, 496 ; *Stevenson* v. *Black*, Saxt., 338 ; *Cooper* v. *Ulmann*, Walk. Ch., 251 ; *Henderson* v. *Herrodd*, 10 *Smedes & Marsh.*, 631. And the plaintiff, having advanced money in consideration of the assignment and upon faith of the representation by Gay that the note was amply secured upon the property, was in the predicament of a *bona fide* purchaser, and can not be prejudiced or affected by the original agreement between the Fullers and Gay that the land should be held as security for $5,000 only, or by any other latent equities existing between them. 2 Story's Eq., § 1503 ; *Merritt* v. *The Northern R. R. Co.*, 12 Barb., 605 ; *Wood* v. *Mann*, 1 Sumn., 506 ; *Flagg* v. *Mann*, 2 id., 487 ; *Brevo* v. *Walters*, 4 Scam., 35. Nor were the rights of the plaintiff, thus acquired, changed by the assignment of two of the Fuller notes to the Thompson Bank and the subsequent conveyance to Crosby of the legal title to the mortgaged property, because the notes were assigned merely as *collateral security* for the payment of a *pre-existing debt*, and the land was conveyed only for the purpose of securing the payment of one of the notes so assigned, so that the defendants do not stand in the position of *bona fide* purchasers for value. *Clark* v. *Flint*, 22 Pick., 243 ; *Morse* v. *Godfrey*, 3 Story, 365, 389 ; *Smith* v. *Babcock*, 2 Wood. & Minot, 246, 287, 288 ; *Dickerson* v. *Tillinghast*, 4 Paige, 215 ; *Evertson* v. *Evertson*, 5 id., 644 ; *Manhattan Co.* v. *Evertson*, 6 id., 457.

3. The defendant Crosby, not being a *bona fide* purchaser for a valuable consideration, and deriving his title only by virtue of a conveyance from a trustee of the plaintiff, executed in violation of the trust, holds the estate subject to the trust. *Babcock* v. *Wyman*, 19 How., 300 ; *Oliver* v. *Piatt*, 3 id., 333, 401 ; Adams' Equity, 173 note ; 2 Story Eq. Jur., §§ 976, 977 ; 1 Greenl. Cruise, 450.

4. This court has the jurisdiction to grant the relief sought by the plaintiff in this suit, although the land in controversy is not within the state. 2 Story Eq. Jur., §§ 1291, 2, 3, 7 ; *Massie* v. *Watts*, 6 Cranch, 160 ; *Hawley* v. *James*, 7 Paige,

213; *Mitchell* v. *Bunch,* 2 id., 606; *Mead* v. *Merritt,* id., 402; *Ward* v. *Arredonds,* Hopk., 213; *White* v. *White,* 7 Gill & Johns., 208; *Guerrant* v. *Fowler,* 1 Hen. & M., 5; *Episcopal Church of Macon* v. *Wiley,* 2 Hill Ch., 584.

*Halsey,* for the respondents.

1. As the land is situated in Minnesota the court has no jurisdiction. It may be admitted that the court would have jurisdiction if the case were one of express trust or fraud, the parties being personally within the jurisdiction. But here is a mere latent equity, if anything, growing out of no contract or duty of the party holding the title, but out of a mere relation of the petitioner to the property itself. Moreover, all the parties interested are not within the jurisdiction of the court, and can not be reached by its process. *Northern Indiana R. R. Co.* v. *Michigan Central R. R. Co.,* 15 How., 233; 3 Lead. Cases in Eq., (3d Ed.) 491; 2 Story Eq. Jur., §§ 743, 4.

2. Parol evidence was not admissible to show that the deed, absolute on its face, was a mortgage. Parol evidence is not admissible to vary the effect of a deed, either at law or in chancery, unless to correct a mistake or show an implied trust. Argument of counsel in *Hayden* v. *Denslow,* 27 Conn., 337, and cases there cited. The statute requires all grants and deeds of land to be in writing and recorded at length. Under our law therefore a mortgage must be in writing.

3. The Thompson bank, by taking the note, although as security for a pre-existing debt, became a *bona fide* holder of it. *Brush* v. *Scribner,* 11 Conn., 388. This being so, the equity of the bank in relation to the land became equal to that of the petitioner. The fact that the note was over due would let in equities only in favor of Fuller & Co., the makers, and not of the petitioner. The equity of the bank being then equal to that of the petitioner, the bank obtained the legal title, and thus acquired both a legal and equitable right to the security, which can not be taken away or in any way affected by the mere equitable right of the petitioner. Crosby, in taking the title, acted merely as the agent of the bank, and the

conveyance to him had the same effect as a conveyance to the bank. The bank had in fact no knowledge of the petitioner's equity, and if it had, having an equal equity, had a right to secure the legal title. The mortgage was given originally merely to secure Gay as indorser, and not to secure the debt, and therefore did not become in equity attached to the debt.

ELLSWORTH, J. After examining this case with care, we are well satisfied that the petitioner can take nothing by his bill.

The land in question, situated in Minnesota, was originally conveyed by Albert Fuller & Co. to Samuel F. Morse of Boston, by an absolute deed, in order to secure him to the amount of five thousand dollars for money advanced them ; the condition being in parol. After this the grantors, wishing to obtain larger advances, arranged with Joseph B. Gay, (who was then the cashier of the Thompson Bank,) for such advances, and Gay made them from time to time by his acceptances to the extent of some fourteen thousand dollars. When Fuller & Co. paid Morse his five thousand dollars, he, at their request, released and conveyed the land in question by a like absolute deed to Gay ; the parties agreeing at the time that Gay was to hold it only as Morse had done, that is, as security for five thousand dollars, but afterwards agreeing that it should be held as security for all acceptances then made and thereafter made by him for them. By reason of further acceptances by Gay for them, Fuller & Co. finally became indebted to him to the amount of $22,000, and in settling their account with him gave him their notes, one for six thousand dollars, two for five thousand each, and two for three thousand each. The six thousand dollar note was soon after passed by indorsement and transfer to the petitioner, to secure him for an indebtedness from Gay of five thousand dollars, he assuring the petitioner at the time that this six thousand dollar note was secured by the land in question in Minnesota. Subsequently, it being discovered that Gay was largely indebted to the Thompson Bank, the president of the bank in behalf of the bank obtained from Gay one of the five thousand dollar notes,

which was indorsed and delivered to the bank, to apply on the indebtedness of Gay to the bank, under assurances from him that it was secured by the conveyance which he held of this land, and a few days after Gay conveyed the land by a like absolute deed to the president of the bank, to make the security of the bank for the note which he had transferred to the bank more perfect and complete. The other notes given in settlement of the $22,000 are outstanding in the hands of *bona fide* holders.

We need hardly remark, what is so obvious from these facts, that the president of the Thompson bank, in taking the deed to himself as security for the five thousand dollar note, acted as the agent of the bank, and that he now holds the title for the bank as fully as if the deed had been given to the corporation itself. He can not deny their right, nor can the petitioner interpose any objection founded on a distinction between the principal and agent, to impair the security.

Upon these facts it is apparent that if no deed had been given for the greater security of the bank, the bank and the petitioner would stand on the same footing in equity in relation to the security, for each party took his note, one the six thousand and the other the five thousand dollar note, under the same assurances that it was secured by the conveyance held by Gay, and neither party had knowledge of the existence or transfer of the note now held by the other. If this were all the parties would be entitled to share proportionally in the security. But there is a most vital difference between the two cases. The bank took care to perfect its security by getting a deed of the land, which was done *bona fide*, and thus they acquired an advantage of which they can not be deprived. Had Gay sold and deeded the land for a full consideration to a person ignorant of any equity attached to it, the purchaser would have taken a clear title, and so it would be in the case of a mortgage, as, we have recently decided in a case not yet reported,* whether given to secure an existing debt or one contracted at the time.

Much has been said about the admission of parol evidence

* *Bridgeport City Bank* v. *Welch,* since reported in 29th Conn. R., 475.

to show that an absolute deed may be treated as a mortgage. It has not been necessary to consider the question in disposing of the present case, and we shall therefore pass it by, remarking only that such evidence is held admissible in courts of equity in England, certainly, if not generally in this country, though I do not know precisely on what ground this exception is placed; but though this be the law elsewhere, it may or may not be so here. No objection was made to the parol evidence on the trial, and we do not know that either party wished then to raise the question. At all events it is not important to the present decision.

We advise that the bill be dismissed.

In this opinion the other judges concurred; except SANFORD, J., who did not sit.